**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darnell J. Lewis, | No. CV-20-00223-TUC-CKJ (DTF) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| David C. Shinn, et al., | |
| Respondents. | |

Petitioner Darnell J. Lewis (Lewis or Petitioner) presently incarcerated in Arizona State Prison Complex-Lewis/Stiner Unit in Buckeye, Arizona, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (Doc. 1.) Before the Court are the Petition, Respondents' Limited Answer to Petition for Writ of Habeas Corpus, and Petitioner's reply. (Docs. 1, 16, 17.) This matter was referred to the undersigned United States Magistrate Judge for a Report and Recommendation. (Doc. 9 at 4.)

As more fully set forth below, this Court recommends that the Petition be denied and dismissed.

## BACKGROUND

**Parole in Arizona**

Arizona eliminated parole for all offenses committed after January 1, 1994. A.R.S. § 41-1604.09(I) (1994). Accordingly, at the time of Petitioner's sentence, the only available sentences for first-degree murder were death, natural life, or life with the possibility of "release" after a specified number of years. A.R.S. §§ 13-751(A)(3),

13-1105(D); *State v. Martinez*, 100 P.3d 30, ¶ 11 (Ariz. App. 2004). "Release" in this context is not synonymous with parole; it is more akin to commutation. *Chaparro v. Shinn*, 459 P.3d 50, ¶¶ 13-15 (Ariz. 2020).

However, the State still offered plea agreements with parole and trial courts continued to sentence defendants to the possibility of parole subsequent to the change in law. *See* Michael Kiefer, *Hundreds in Arizona Got Life with Parole, a Sentence Barred by Law. Did State Prisons Just Fix the Problem?*, The Republic (Mar. 30, 2017), https://www.azcentral.com/story/news/local/arizonainvestigations/2017/03/31/arizona departmentcorrectionslifewithparole/99850694/; Michael Kiefer, *Hundreds of People Were Sentenced to Life With Chance of Parole. Just One Problem: It Doesn't Exist*, The Republic (Mar. 19, 2017), https://www.azcentral.com/story/news/local/arizona investigations/2017/03/19/mythlifesentencewithparolearizonaclemency/99316310/; Letter from Ariz. Governor Douglas A. Ducey to Ariz. Sec'y of State (Apr. 30, 2018), https://www.azleg.gov/govlettr/53leg/2r/sb1211.pdf (describing upcoming issue with sentences soon being entitled to parole hearings without board in existence). Arizona then enacted A.R.S. § 13-718, which provides that any person sentenced to life with the possibility of parole pursuant to a plea agreement between January 1, 1994, and August 3, 2018, is eligible for parole in accordance with their sentence. In 2020, the Arizona Supreme Court clarified that a 1996 sentence including parole eligibility given after a jury trial was "illegally lenient." *Chaparro*, 459 P.3d 50, ¶¶ 3, 18. However, because the State had not timely appealed or filed a post-judgment motion, the sentence was final and enforceable, and the defendant was eligible for parole in accordance with his illegally lenient sentence. *Id.* ¶¶ 18-19, 23.

**State Trial Court Proceedings**

Petitioner was charged with first-degree murder occurring on or about November 1, 2005. (Doc. 16-1 at 3.) Before trial, the State offered Petitioner a plea agreement. (Doc. 1-3 at 20-24.) Petitioner could have pled guilty to second-degree murder and his sentencing range would have been between ten- and twenty-two-years' imprisonment. *Id.* at 20.

Petitioner rejected the plea offer. (Doc. 1-1 at 2.) After a jury trial, Petitioner was convicted of first-degree murder and thereafter sentenced to imprisonment for "[l]ife with possibility of parole after service of no less than 25 years." (Doc. 1-3 at 33; Doc. 16-1 at 5, 8.) The Arizona Court of Appeals described the facts underlying Petitioner's convictions as follows:

> During the time in question, Lewis lived in an apartment with his father, middle brother (Anthony), and a friend, Robert Bustamonte. The victim, Lewis's younger brother, was seventeen and had been living with a friend's family for about six years.
>
> On Halloween, October 31, 2005, the victim went to Lewis's apartment. He and Lewis exchanged angry words until Anthony intervened, and the victim then drove away. Lewis then told Bustamonte that he wanted to "beat his [brother's] ass" and that "[h]e tips me so far. I can only go so far."
>
> The next morning, Lewis went to the victim's house and knocked on the door. Adrienne, who lived with the victim, woke him up and told him that Lewis was there to see him. The victim went outside and walked with Lewis down the street to an intersection.
>
> Shortly thereafter, as Adrienne was walking her dog down the street, she heard a gunshot from the intersection. As she approached, she saw Lewis's arm outstretched with a gun in his hand. Adrienne testified that Lewis had "tilted the gun" and said, "'Shut the f---up, Mark'" before firing another shot. She then saw Lewis "running towards his car." The victim died of a fatal gunshot wound in his back before police or paramedics arrived.
>
> Other witnesses heard or saw various parts of the altercation. A nearby neighbor heard a person angrily yell, "[t]ake that, b----" or "[t]hat's what you get." Then he heard two gunshots and saw Lewis walk to his car and drive away. Another witness heard three gun shots and a voice yell something to the effect of, "you're f---ed now, b----."
>
> Another witness was riding his bicycle through the neighborhood when he passed Lewis and the victim. After hearing a gunshot, he turned around "and saw one of the individuals kind of bent over as if he had been shot, and then [he] saw the other individual with his arm outstretched," heard another gunshot, and saw the victim fall to the ground. That witness also saw the shooter run back toward a car, get in, and drive away.

*State v. Lewis*, No. CA-CR 2007-0018, 2008 WL 4532433, at ¶¶ 2-7 (Ariz. App. Mar. 17,

2008) (footnote omitted). The facts as recited by the court of appeals are entitled to a presumption of correctness. *See* § 2254(e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that the statement of facts in an Arizona Supreme Court opinion should not be afforded the presumption of correctness).

After trial, Petitioner filed a Motion for New Trial. (Doc. 1-3 at 27.) He contested the "improper use of the defendant's statement to police," the failure "to give an accident instruction and failing to give a negligent homicide instruction to the jury," and giving an unwarranted flight instruction. *Id.* at 28-29.

**Proceedings in the Arizona Court of Appeals**

On January 16, 2007, Petitioner filed a notice of appeal. (Doc. 16-1 at 11.) He raised the following issues in his opening brief:

(1) "Whether the trial court committed reversible error in allowing the state to display an in-life photograph of the victim."

(2) "Whether appellant was denied his constitutional right to a fair trial by virtue of prosecutorial misconduct."

(3) "Whether the trial court denied appellant his constitutional right to a fair trial by limiting the use of his statement to police for purposes of rehabilitation."

*Id.* at 14, 26-27. The Arizona Court of Appeals affirmed Petitioner's convictions and sentences. *Lewis*, 2008 WL 4532433, at ¶ 40.

**Proceedings in the Arizona Supreme Court**

Petitioner filed a pro se petition for review before the Arizona Supreme Court. *Id.* at 136. The Arizona Supreme Court denied the petition on July 18, 2008. *Id.* at 178. On August 27, 2008, the mandate was filed. *Id.* at 180.

**State Court Post-Conviction Relief Proceedings**

*First PCR Proceeding*

On July 31, 2008, Petitioner filed his first notice of Post-Conviction Relief (PCR). *Id.* at 184. On April 15, 2009, his attorney filed a notice that after a review of the record he could not find any "tenable issue for review." (Doc 16-2 at 3-4.) The trial court granted

several extensions for Petitioner to file a pro se PCR petition. *Id.* at 7. But the court denied Petitioner's January 28, 2010 request for an additional extension and summarily dismissed the matter, concluding that ten months "was a reasonable amount of time within which to prepare a Rule 32 petition." *Id.* The court denied Petitioner's later motion for reconsideration. *Id.* at 8.

The Arizona Court of Appeals granted review but denied relief after finding "no fault with the [trial] court's analysis." *State v. Lewis*, No. 2 CA-CR 2010-0129, 2010 WL 2892882, at ¶¶ 4-5 (Ariz. App. July 23, 2010). On February 17, 2011, the Arizona Supreme Court denied Petitioner's petition for review. (Doc. 16-2 at 14.) On April 11, 2011, the mandate was filed. *Id.* at 16.

### Second PCR Proceeding

On August 12, 2011, Petitioner filed a second notice of PCR. *Id.* at 19. On September 13, 2011, the trial court dismissed the notice because it failed to state specific facts to support the claim or any reason why the claims were not raised in the previous petition or in a timely manner. *Id.* at 57. Petitioner did not appeal the court's decision. *State v. Lewis*, No. 2 CA-CR 2012-0485-PR, 2013 WL 1581102, at ¶ 2 (Ariz. App. April 15, 2013) (appeal from third PCR proceeding describing procedural history).

### Third PCR Proceeding

On October 3, 2011, Petitioner filed his third notice of PCR. (Doc. 16-2 at 26.) On September 19, 2012, the trial court dismissed the petition because Petitioner raised no colorable claims. *Id.* at 24. Petitioner filed a motion for rehearing before the trial court. (Doc. 16-3 at 4.) The trial court denied his motion. *Id.* at 8.

The Arizona Court of Appeals granted review but denied relief. *Lewis*, 2013 WL 1581102, at ¶ 6. The appellate court concluded that Petitioner "failed to raise any non-precluded claims in his successive post-conviction relief proceeding." *Id.* On October 23, 2013, the Arizona Supreme Court denied Petitioner's petition for review. (Doc. 16-3 at 24.) On November 19, 2013, the mandate was filed. *Id.* at 26.

*Fourth PCR Proceeding*

On June 22, 2017, Petitioner initiated his fourth PCR proceeding. *Id.* at 30. The trial court dismissed the proceeding stating that "Petitioner has failed to present a material issue of fact or law that would entitle him to an evidentiary hearing," and that "Petitioner has failed to state a colorable claim for relief on any basis." *Id.* at 36.

*Fifth PCR Proceeding*

On March 18, 2019, Petitioner filed his final notice of post-conviction relief. (Doc. 1-3 at 2.) He alleged that he could not contest his illegal sentencing until he learned it was illegal. *Id.* at 3. He also urged that the "claims defendant wishe[d] to raise should have been raised by appellate counsel." *Id.*

On the same day, he filed his Petition for PCR. *Id.* at 5. He raised the following claims: his counsel failed to properly advise him during plea negotiations and the trial court improperly instructed the jury. *Id.* at 8-9, 12-15.

On April 18, 2019, the trial court dismissed the claim because the claims were precluded. *Id.* at 37. Petitioner filed a Petition for Review to Arizona Court of Appeals, which raised a claim of ineffective assistance of trial counsel arguing that his trial counsel was ineffective during plea negotiations and a claim that the court erred when instructing the jury. *Id.* at 47-52.

On August 26, 2019, the Arizona Court of Appeals granted review but denied relief. *State v. Lewis*, No. 2 CA-CR 2019-0114-PR, 2019 WL 4014726, at ¶ 5 (Ariz. App. Aug. 26, 2019). The court reasoned that the claims could not be raised in an untimely proceeding. *Id.* ¶ 4. It also noted that the trial court had "arguably imposed an illegal sentence from which the state did not appeal" by stating Petitioner would be eligible for parole after twenty-five years. *Id.* at n.1.

Petitioner filed a motion for reconsideration to the appellate court. (Doc. 1-3 at 38-43.) He claimed that he only requested a time computation once he learned of *Viramontes v. Ryan*, No. CV-16-00151-TUC, 2019 WL 568944 (D. Ariz. Feb. 12, 2019). *Id.* at 39. Petitioner attached an "Inmate Time Computation" from June 15, 2019. *Id.* at 45.

The appellate court denied the motion for reconsideration. (Doc. 16-3 at 140.)

Petitioner filed a Petition for Review before the Arizona Supreme Court. (Doc. 1-3 at 55.) He raised the following issues: "whether, in light of A.R.S. § 41-1604.09, a person convicted of first-degree murder following a jury trial for actions that took place on or after January 1, 1994, is parole eligible after 25 years when his sentence state[s] he is sentenced to 'life without the possibility of parole for 25 years,'" "whether post-conviction relief is precluded in this matter," "ineffective assistance of counsel, and court[']s abuse of discretion" in improperly instructing the jury. *Id.* On April 29, 2020, the Arizona Supreme Court denied Petitioner's Petition for Review. *Id.* at 63. The mandate was filed on September 15, 2020. (Doc. 16-3 at 145.)

**Federal Habeas Corpus Proceeding**

On May 19, 2020, Petitioner filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (Doc. 1.) He alleges the following grounds for relief:

"**Ground One:** Petitioner was deprived the effective assistance of counsel during plea negotiations. This violated Petitioner's right to counsel and due process of law, as guaranteed by the 5, 6, and 14 Amendments to the U.S. Constitution." (Doc. 1-1 at 3.) He argues that his counsel "failed to advise [him] that parole has been abolished in Arizona" and that he would have accepted the plea agreement had his counsel properly informed him of the consequences of going to trial. *Id.* at 4. Plaintiff does acknowledge that Arizona Department of Corrections has informed him that he is now eligible for parole but contends this does not correct the ineffective assistance of counsel error. *Id.*

"**Ground Two:** The trial court made errors that resulted in the petitioner being denied a fair trial[.] This was a violation of Petitioner's Due Process of the United States Constitution (*Estelle v. McGuire*, 502 U.S. 62 (1991))." Doc. 1 at 7. Petitioner contends that the trial court erred by failing to instruct the jury on accidental and negligent homicide and by instructing the jury on flight. (Doc. 1-1 at 6.) Petitioner claims that these failures shifted "the burden of persuasion to the defendant on the element of intent." *Id.* He contested this issue in a motion for new trial. *Id.* He argues that this constitutes fundamental

1 | error. *Id.* at 6-7.

Petitioner also notes that even though the conviction became final over a year ago that the statute of limitations should not bar his petition. Doc. 1 at 13. He urges the Court to apply equitable tolling. *Id.* "The widespread confusion surrounding Arizona's truth-in-sentencing laws constitutes an extraordinary circumstance, and that he had diligently pursued relief since learning the relevant facts." *Id.* He claims that he "inquired about his claims once he learned that parole was not available to him, Petitioner quickly sought relief in the Arizona courts by filing his Fifth notice of PCR as well as submitting a petition." *Id.* at 14. He states that his "diligence continued after the PCR court ruled his petition precluded and denied his claim." *Id.*

## TIMELINESS

Whether a petition is time-barred by the statute of limitations is a threshold issue that must be resolved before considering other procedural issues or the merits of the individual's claim. *See White v. Klitzkie,* 281 F.3d 920, 921-22 (9th Cir. 2002). The Anti-Terrorism and Effective Death Penalty Act's (AEDPA) one-year statute of limitations applies here. *See* 28 U.S.C. § 2244(d)(1); *see Furman v. Wood*, 190 F.3d 1002, 1004 (9th Cir. 1999). The statute of limitations is applied on a claim-by-claim basis. *Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012).

### Accrual Date

The limitations period begins to run on the date when "the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" or when "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." § 2244(d)(1)(A), (D). If vital facts could not have been known when a judgment becomes final, then the habeas clock will start ticking when those facts could be discovered through reasonable diligence. *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012). An issue is discoverable if it is accessible in the circumstances. *Id.*

*Ground One*

Petitioner has alleged that he could not have discovered that his sentence was illegal until he checked on his rights. (Doc. 1-3 at 3.) The Court agrees that his claim was not discoverable when his sentence became final.

The Court focuses on when he could have learned, through reasonable diligence, that the parole system had been abolished. This matter received media attention in March 2017. *See* Kiefer, *Hundreds in Arizona Got Life with Parole, a Sentence Barred by Law. Did State Prisons Just Fix the Problem?*, *supra* at 2; Kiefer, *Hundreds of People Were Sentenced to Life With Chance of Parole. Just One Problem: It Doesn't Exist*, *supra* at 2. Then in April 2018, the Governor signed S.B. 1211, which honors plea agreements containing "a stipulation to parole eligibility" for those sentenced between January 1, 1994, and August 3, 2018. A.R.S. § 13-718; Letter from Ariz. Governor Douglas A. Ducey to Ariz. Sec'y of State, *supra* at 2. Petitioner asserts in his reply that he immediately did research and began preparing his petition after S.B. 1211 was introduced in 2018. (Doc. 17 at 3.) S.B. 1211 was introduced on January 18, 2018. S. J., 53d Legs, 2d Reg. Sess. (Jan 18, 2018). He further asserts that "[b]efore the enactment of [S.B. 1211] in 2018, Petitioner had no reason to question his sentence or his stages of plea negotiations." (Doc. 17 at 4.) In his motion for reconsideration before the state appellate court, he contended that he relied on news articles and S.B. 1211 to get his information and diligently pursue relief. (Doc. 1-3 at 39.)

With reasonable diligence, Petitioner could have learned of this issue in either March 2017, when this matter received press, or on April 30, 2018, when Governor Ducey signed S.B. 1211. Even applying the later date, the claim in Ground One is untimely absent tolling.

*Ground Two*

Petitioner does not present any reason why the claim in Ground Two was not discoverable until after the conviction was final. (Docs. 1, 1-1.) Further, Petitioner admits that the claim in Ground Two was presented to the trial court in a motion for new trial on December 15, 2006. (Doc. 1-1 at 6; Doc. 1-3 at 27.) Hence, the claim in Ground Two accrued when Petitioner's judgment was final, which is ninety days from July 18, 2008―October 18, 2008. *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999). Ground Two is untimely unless the time was tolled.

**Statutory Tolling**

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation . . . ." § 2244(d)(2). A postconviction petition that is untimely under state law does not toll the time limits under § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). If a subsequent PCR petition asserts new claims, then it is a "new round," and the time between the petitions is not tolled. *Stancle v. Clay*, 692 F.3d 948, 953 (9th Cir. 2012); *Banjo v. Ayers*, 614 F.3d 964, 968-69 (9th Cir. 2010).

*Ground One*

The appellate court stated that the petition in the fifth PCR proceeding was untimely. *Lewis*, 2019 WL 4014726, at ¶ 4. The duration of the fifth PCR proceeding is not subject to statutory tolling because it was not properly filed. *See Pace*, 544 U.S. at 417. Hence, Claim One is untimely, unless the claim is subject to equitable tolling.

*Ground Two*

Assuming all five PCR proceedings were properly filed, which as noted above is incorrect, the claims in Ground Two would still be untimely. Between the third and fourth PCR proceeding over three years lapsed. (Doc. 16-3 at 26, 30.) Additionally, between the fourth and fifth PCR proceedings approximately one and a half years passed. *Id.* at 35, 39. This time would not have been tolled because Petitioner asserted new claims in the fourth and fifth PCR proceedings such that they constituted "new rounds." *See Stancle*, 692 F.3d

at 953; *Banjo*, 614 F.3d at 968-69. Accordingly, more than a year has passed for Ground Two making the claim untimely. Thus, the Court must now consider if the time for both grounds has been equitably tolled.

**Equitable Tolling**

A habeas petitioner may escape his untimely filing by establishing some ground for equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (Section 2244(d) "is subject to equitable tolling in appropriate cases."). The petitioner bears the burden of proof in seeking to equitably toll the AEDPA's statute of limitations. *Pace*, 544 U.S. at 418. "To be entitled to equitable tolling [the petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace*, 544 U.S. at 418). "[T]he threshold necessary to trigger equitable tolling [under the AEDPA] is very high, lest the exceptions swallow the rule." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)). This is an extremely fact-dependent inquiry, which must be made on a case-by-case basis. *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001); *see Holland*, 560 U.S. at 649-50, 654. An evidentiary hearing is not necessary when the record is amply developed. *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010).

Petitioner does claim that Ground One should be equitably tolled. (Doc. 1 at 13-14.) The Court considers his argument.

*Diligent Pursuit of Rights*

Petitioners must act with "reasonable diligence" in pursuing their rights; courts do not require "maximum feasible diligence." *Holland*, 560 U.S. at 653 (citations omitted). Petitioners must show they had been "reasonably diligent in pursuing [their] rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir.), *cert. denied,* 141 S. Ct. 878 (2020). This requires petitioners to specify the steps they took to diligently pursue their claims. *Roy v. Lampert*, 465 F.3d

964, 972 (9th Cir. 2006) (quoting *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998)). Courts must consider the "level of care and caution in light of [petitioners'] particular circumstances." *Smith*, 953 F.3d at 599 (quoting *Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011)).

Here, Petitioner claimed that, after S.B. 1211 was introduced in January 2018, he "immediately did research and began preparing his petition." (Doc. 17 at 3.) Petitioner even admits that he relied on news articles, which were in the public sphere and reasonably discoverable as early as March 2017, to learn that parole had been abolished. (Doc. 1-3 at 39.) However, he does not explain why his PCR petition was filed almost two years after the media coverage and nearly a year after S.B. 1211 was signed into law. (*See* Docs. 1, 17; Doc. 16-3 at 43-55.) He merely states in a conclusory fashion that he "quickly sought relief in the Arizona courts by filing his [f]ifth notice of PCR as well as submitting a petition." (Doc. 1 at 14.) Petitioner must be diligent before and after discovering the issue. *Smith*, 953 F.3d at 598-99. Conclusory statements without specific efforts made as proof of a petitioner's purported diligence are insufficient to support equitable tolling. *See Roy*, 465 F.3d at 972 (quoting *Miller*, 141 F.3d at 978).

Overall, Petitioner has not shown that he acted with reasonable diligence in pursuing his rights. An evidentiary hearing is not warranted here. *See Roberts*, 627 F.3d at 773.

***Extraordinary circumstances***

"[T]he requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.'" *Waldron-Ramsey*, 556 F.3d at 1011 (alteration in *Waldron-Ramsey*) (quoting *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008)). Petitioner cites *Viramontes*, 2019 WL 568944, to show that the "widespread confusion surrounding Arizona's truth-in-sentencing laws constitutes an extraordinary circumstance." (Doc. 1 at 13-14.) The Court agrees.

Hundreds of defendants were sentenced to parole after the Arizona Legislature had

abolished it. *Viramontes*, 2019 WL 568944, at *4. The State even continued to offer parole as a part of their plea agreements. Letter from Ariz. Governor Douglas A. Ducey to Ariz. Sec'y of State, *supra* at 2. This shows confusion was prevalent among well-trained legal professionals. This error was not short-lived or easily discoverable for someone in Petitioner's position. Thus, Petitioner has made a showing of extraordinary circumstances preventing him from timely filing his petition.

Despite the extraordinary circumstance, the Court recommends dismissing the petition as untimely. First, it was filed well after the year statute of limitations had already expired. Second, statutory tolling does not save it from untimeliness. Third, Petitioner has not shown equitable tolling applies to Ground One because he has not shown that he diligently pursued his rights.

Petitioner has not argued that Ground Two should be equitably tolled. (Doc. 1 at 13-14.) Petitioner was aware of the jury instructions since the trial and even contested them in the motion for new trial in 2006. (Doc. 1-3 at 27.) He has not explained how any extraordinary circumstances prevented him from pursuing it nor has he shown that he diligently pursued it in the decade before he contested them again in the fifth PCR proceeding. So, he failed to satisfy his burden to show equitable tolling is appropriate for Ground Two. *See Pace*, 544 U.S. at 418. Because Ground Two is not equitably tolled, it is untimely.

In an abundance of caution, however, the Court will consider possible preclusion of the claim in Ground One.

**PROCEDURAL DEFAULT**

Petitioner acknowledges that his ineffective assistance of trial counsel was decided on procedural grounds, but he asserts that the procedural default is excused by *Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. 1-1 at 4-5; Doc. 17 at 5.)

**The Procedural Default Cannot be Excused**

Federal habeas review of a procedurally defaulted claim is precluded unless the default is excused. A procedural default may be excused if a habeas petitioner establishes either (1) "cause" and "prejudice," or (2) that a fundamental miscarriage of justice has occurred. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). "Cause" that is sufficient to excuse a procedural default is "some objective factor external to the defense" which precludes the Petitioner's ability to pursue his claim in state court. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). "Prejudice" in the habeas context means actual, objective harm resulting from the alleged error. *United States v. Frady*, 456 U.S. 152, 170 (1982) (habeas petitioners "shoulder the burden of showing, not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage" and infected state proceedings with errors of constitutional dimension).

"Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17. "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14. A prisoner must also show that his PCR counsel was deficient. *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013).

Here, prior to trial, the State offered Petitioner a plea agreement for second-degree murder with a sentencing range of ten- to twenty-two-years' imprisonment. (Doc. 1-3 at 20.) Petitioner's trial counsel apparently advised him that if he went to trial, he could be sentenced to life with the possibility of parole after twenty-five years, a sentence that was abolished in 1994. (Doc. 1-1 at 2.) Petitioner rejected the plea offer and proceeded to trial. *Id.* The trial court sentenced him to life with the possibility of parole after twenty-five years, an illegal sentence. (Doc. 1-3 at 33; Doc. 16-3 at 128.) Because the State never

appealed the illegally lenient sentence, the state courts lack authority to correct it. *See Chaparro*, 459 P.3d 50, ¶ 18; *Lewis*, 2019 WL 4014726, at n.1.

To establish that trial counsel was constitutionally ineffective under *Strickland*, "a defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Deficient performance is established when counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Effective counsel enables defendants to "make a reasonably informed decision whether to accept a plea offer" by informing them of the advantages and disadvantages of the offer. *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)); *see Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Her, trial counsel advised Petitioner that the trial court could sentence him to life with the possibility of parole, which the trial court did. (Doc. 1-1 at 2; Doc. 1-3 at 33.) This was an illegally lenient sentence. *See Chaparro*, 459 P.3d 50, ¶ 18; *Lewis*, 2019 WL 4014726, at n.1. While the advice was legally incorrect, it accurately described what could and did occur in the case. Hence, Petitioner had sufficient information to make an informed decision in rejecting a favorable plea agreement, which he did. Petitioner has not presented a substantial ineffective-assistance-of-trial-counsel claim.

Because Petitioner has not presented a substantial ineffective-assistance-of-trial-counsel claim, the procedural default of the claim in Ground One cannot be excused. Thus, the petition must be dismissed.

**RECOMMENDATION**

Petitioner's claims in grounds One and Two are untimely. Further, his claim in Ground One is procedurally defaulted without excuse. Accordingly, it is recommended that the district court, after its independent review, deny and dismiss Petitioner's Petition.

Pursuant to Rule 72(b)(2), Fed. R. Civ. P., any party may serve and file written

objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. The Clerk of Court is directed to terminate the referral of this matter. Filed objections should bear the following case number: **4:20-cv-00223-TUC-CKJ**.

Dated this 21st day of June, 2021.

Honorable D. Thomas Ferraro
United States Magistrate Judge