**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Darnell J Lewis,<br><br>         Petitioner,<br><br>v.<br><br>David C Shinn, et al.,<br><br>         Respondents. | No. CV-20-00223-TUC-CKJ<br><br>**ORDER** |

This matter was referred to Magistrate Judge D. Thomas Ferraro, pursuant to Rules of Practice for the United States District Court, District of Arizona (Local Rules), Rule (Civil) 72.1(a). On June 21, 2021, Magistrate Judge Ferraro issued a Report and Recommendation (R&R). (Doc. 18.) He recommends Petitioner Lewis (Petitioner) be denied habeas relief because the Petition is untimely and procedurally defaulted. For both reasons, this Court finds review is barred and adopts the recommendation to deny the Amended Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Amend. Petition (Doc. 16)).

STANDARD OF REVIEW

The duties of the district court in connection with a R&R by a Magistrate Judge are set forth in Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1). Where the parties object to a R&R, "'[a] judge of the [district] court shall make

a *de novo* determination of those portions of the [R&R] to which objection is made.'" *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) (quoting 28 U.S.C. § 636(b)(1)).

This Court's ruling is a *de novo* determination as to those portions of the R&R to which there are objections. 28 U.S.C. § 636(b)(1)(C); *Wang v. Masaitis*, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121-22 (9th Cir. 2003) (*en banc*). To the extent that no objection has been made, arguments to the contrary have been waived. Fed. R. Civ. P. 72; *see* 28 U.S.C. § 636(b)(1) (objections are waived if they are not filed within fourteen days of service of the R&R), *see also McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir. 1980) (failure to object to magistrate's report waives right to do so on appeal); Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974) (when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation)).

The parties were sent copies of the R&R and instructed that, pursuant to 28 U.S.C. § 636(b)(1), they had 14 days to file written objections. *See also*, Fed. R. Civ. P. 72 (party objecting to the recommended disposition has fourteen (14) days to file specific, written objections). The Court has considered the Objection filed by Petitioner, the Respondent's Reply, and the original briefs and exhibits considered by the Magistrate Judge relevant to Petitioner's objections.

REPORT AND RECOMMENDATION: OBJECTIONS

The Petition alleges two grounds for relief. First, he alleges ineffective assistance of Post-Conviction Relief (PCR) counsel to assert an ineffective assistance of trial counsel claim because during plea negotiations counsel "'failed to advise [him] that parole has been abolished in Arizona,' and if he had been properly advised of the consequences of going to trial, he would have accepted the plea agreement. (R&R (Doc.18) at 7 (citing Petition (Doc. 1-1) at 3.) Second, he claims jury instruction errors[1] resulted in a denial of Petitioner's right to a fair trial. *Id.*

---

[1] "The trial court erred by failing to instruct the jury on accidental and negligent homicide and by instructing the jury on flight." (R&R (Doc. 18) at 7.)

Both grounds for relief were raised in the state courts in a 5th PCR, which was filed on March 18, 2019, and dismissed as precluded. The Arizona Court of Appeals granted review on August 26, 2019, but denied relief because the claims could not be raised in an untimely proceeding. The Petitioner sought reconsideration, which was denied. On April 29, 2020, the Arizona Supreme Court denied his Petition for Review and the Mandate issued on September 15, 2020. This habeas action was filed on May 19, 2020.

The Magistrate Judge recommended that this Court find both claims are untimely and barred by the one-year statute of limitations period under the Anti-Terrorism and Effective Death Penalty Act's (AEDPA). He found that neither of the grounds for relief can be saved by statutory or equitable tolling of the limitation period.

First, he concluded neither of the habeas grounds for relief are subject to statutory tolling because the 5th PCR proceeding was untimely and, therefore, not a properly filed petition for relief. A petitioner is not entitled to statutory tolling when, in the last reasoned state court decision, the Arizona Court of Appeals found that the PCR petition was untimely. *See* 28 U.S.C. § 2244(d)(2) (tolling applies only to "properly filed" petitions); *Curiel v. Miller*, 830 F.3d 864, 868 (9th Cir. 2016) (*en banc*) (stating that untimely petitions are not "properly filed"). Additionally, Ground 2 was raised by a motion for new trial meaning this claim accrued on December 15, 2006. As noted by the Magistrate Judge there was a three-year lapse in time between the third and fourth PCRs and one and a half years passed between the fourth and fifth PCR proceedings.

The Petitioner objects to the Magistrate Judge's conclusion that the statute of limitation period for Ground 1 is neither statutorily nor equitably tolled. He asserts that he discovered the grounds for this claim around May 14, 2018, when the Arizona Department of Corrections (ADOC) posted an Inmate Notification and copy of A.R.S. § 13-717, (§ 13-718,[2] renumbered by amendment in 2022).[3] Even accepting this accrual date, the habeas

---

[2] For purposes of this Order, the Court uses the original statute number because the renumbering has only recently occurred and relevant case law cites to the original statute § 13-717.

[3] The Court grants the Motion to Expand the Record (Doc. 23) and the Motion to Clarify the Motion to Expand the Record (Doc. 24). Both assert ADOC posted SB 1211, A.R.S. § 13-717, which was adopted by the Arizona legislature to address the impact of illegal

- 3 -

Petition filed on May 19, 2020, remains barred by the AEDPA one-year statute of limitation period, unless equitably tolled. As noted above, the 5th PCR was untimely and not properly filed to toll the statute of limitation period.

The Court finds that the Petition survives only if equitable tolling applies. The Petitioner makes no arguments in equity related to Ground 2 of the Petition. Accordingly, the Court limits its analysis to Ground 1, the claim alleging ineffective assistance of PCR and trial counsel related to Arizona's truth-in-sentencing law.

In 1994, the Arizona State Legislature passed a truth-in sentencing law doing away with parole. For unfathomable reasons, for the next 24 years-- prosecutors continued to offer parole in plea agreements despite the elimination of parole, and judges continued to accept such agreements and impose sentences of life with the possibility of parole. *Viramontes v. Ryan*, No. CV-16-00151-TUC-RM, 2019 WL 568944, at *1 (D. Ariz. Feb. 12, 2019). That is what happened here. Petitioner was sentenced in 2006, after a jury convicted him of first-degree murder, to life with a possibility of parole after service of no less than 25 years.

Between 2017 and 2018, this confusion came to light. "In response, the Arizona legislature passed Senate Bill 1211, which honors those plea agreements notwithstanding the elimination of parole. *Id*. (citing A.R.S. § 13-717). The legislation was passed April 30, 2018, with an effective date of August 3, 2018. As noted above, ADOC posted the legislative change, A.R.S. § 13-717, by May 14, 2018. The Court finds that by May 14, 2018, the Petitioner understood that he had received an illegally lenient sentence. Almost a year later, he filed the 5th PCR on March 18, 2019.

A federal habeas case, *Viramontes,* issued a month before he filed the 5th PCR, on February 12, 2019. It applied the corrective measures set out in A.R.S. § 13-717, which expressly applied only to sentences imposed pursuant to a plea agreement, to a petitioner who had gone to trial and been given the illegal life, including parole, sentence. "In 2020, the Arizona Supreme Court clarified that any sentence including parole eligibility given

---

sentences which had issued since 1994.

- 4 -

after a jury trial was final and enforceable and the defendant was eligible for parole in accordance with his illegally lenient sentence." (R&R (Doc. 18) at 2 (citing *Chaparro v. Shinn*, 459 P.3d 50, 51-52 (Ariz. 2020)) The court in *Chaparro* held that "[t]he only statutory power we are afforded to increase an illegal sentence to conform to the judgment of conviction is predicated '[u]pon an appeal by the state.'" *Chaparro,* 459 P.3d at 54 (quoting *State v. Dawson*, 164 Ariz. 278, 286, 792 P.2d 741, 741 (1990)).

Petitioner does not allege he has been denied this lenient sentence, which was noted by the Arizona Court of Appeals when it denied the Fifth PCR as untimely. It found that "the trial court had 'arguably imposed an illegal sentence from which the state did not appeal' making the Petitioner eligible for parole after twenty-five years." (R&R (Doc. 18) at 6 (quoting *State v. Lewis*, No. 2 CA-CR 2019-0114-PR, 2019 WL 4014726, *4 n.1(Ariz. App. Aug. 26, 2019). The trial court recognized that Petitioner arguably received an illegal sentence, but that he was not asserting he is entitled to a parole hearing and has been denied one, assuming such a claim would be cognizable. *Lewis*, 2019 WL 4014726, *4 n.1 (citing Ariz. R. Crim. P. 32.1(a)-(h); *cf. State v. Dawson*, 164 Ariz. 278, 283-84 (1990) (appellate court lacks authority to correct illegally lenient sentence absent appeal by state)).

Petitioner sought reconsideration. Only then, did the Petitioner submit a copy of an "Inmate Time Computation" from June 15, 2019, which reflects he did not have a parole eligibility date. It said: "life." (Resp. to Petition (Doc. 16-3) at 146). He acknowledges that the ADOC has informed him that he is now eligible for parole. (R&R (Doc. 18) at 7.) The dates are relevant here in the context of assessing the various efforts undertaken by the Petitioner to pursue his claim.

To be clear, Petitioner claims that he had ineffective assistance of counsel related to the plea agreement proffered by the State for second degree murder, with a sentencing range of 10 to 22 years. He was charged with first degree murder. His counsel informed him that if he went to trial, he could be facing sentences for first degree murder, as follows: death, natural life, or life with the possibility of parole after 25 years. The last sentencing option, life with the possibility of parole was not a legal option because in 1994, the

- 5 -

Arizona State legislature had eliminated parole for all offenses. A.R.S. § 41-1604.09(I) (1994). Nevertheless, this was the sentence imposed, and the sentence the Petitioner is serving.

Under the law as of 1994, defendants, like the Petitioner, convicted of first-degree murder faced three possible sentences: death, natural life (life with no chance of release on any basis), or life with the possibility of "release" after 25 years. *Viramontes*, 2019 WL 568944, at *1 (citing *State v. Martinez*, 100 P.3d 30, 33 (Ariz. Ct. App. 2004)). "Release" is not synonymous with parole. "'Release' may be granted only through executive clemency (e.g., a pardon)—a form of relief unlikely to be granted to defendants convicted of first-degree murder." *Id.* (citing *State v. Vera*, 334 P.3d 754, 760 (Ariz. Ct. App. 2014)).

Petitioner alleges that he turned down the plea offer because he believed that if he did not prevail at trial, he might serve a sentence of 25 years in prison and would be eligible for parole thereafter. He argues that even though this is what happened, the bad advice caused him to reject the plea agreement. If he had instead been told that the only sentencing options were death or a life sentence in prison, with no possibility of parole, he would have accepted the plea agreement for a 10-to-22-year sentence.

Before turning to the merits of the habeas argument, the Court must consider whether the statute of limitations has been equitably tolled and if so, whether the claim survives the procedural default rule. The Magistrate Judge addressed both.

**A. Equitable Tolling**

There is no dispute as to the law. "'To be entitled to equitable tolling [the petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.'" (R&R (Doc. 18) at 11 (citing *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "This is an extremely fact-dependent inquiry, which must be made on a case-by-case basis." *Id.* (citing *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001); *Holland v. Florida*, 560 U.S. 63, 649-50, 654 (2010)). The burden is

on the Petitioner to meet the threshold necessary to trigger equitable tolling, which is a high standard to ensure the exception does not swallow the rule. *Id.* (citations omitted).

### 1. Extraordinary circumstances

"'[T]he requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation, or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.'" (R&R (Doc. 18) at 12 (quoting *Waldron-Ramsey*, 556 F.3d at 1011 (alteration in *Waldron-Ramsey*) (further quotes omitted). There is no objection to the Magistrate Judge's reliance on the conclusion reached in *Viramontes* that the "widespread confusion surrounding Arizona's truth-in-sentencing laws constitutes an extraordinary circumstance." *Id.* (cleaned up). The Court agrees that the hundreds of defendants sentenced to parole after the state legislature abolished it reflects "confusion was prevalent among well-trained legal professionals." *Id.* at 13. "This error was not short-lived or easily discoverable for someone in Petitioner's position. Thus, Petitioner has made a showing of extraordinary circumstances preventing him from timely filing his petition." *Id.*

### 2. Diligent Pursuit of Rights

"Petitioners must act with "reasonable diligence" in pursuing their rights; courts do not require "maximum feasible diligence." *Id.* at 11 (quoting *Holland*, 560 U.S. at 653 (citations omitted). "Petitioners must show they had been 'reasonably diligent in pursuing [their] rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court.'" *Id.* (quoting *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir.), *cert. denied*, 141 S. Ct. 878 (2020). "Courts must consider the 'level of care and caution in light of [petitioners'] particular circumstances.'" *Id.* at 12 (quoting *Smith*, 953 F.3d at 599) (further quotes omitted).

The Petitioner objects to the Magistrate Judge's conclusion that he was not diligent in pursuing his rights. The Magistrate Judge summarized the case, as follows:

> Here, Petitioner claimed that, after S.B. 1211 was introduced in January 2018, he "immediately did research and began preparing his petition." (Doc. 17 at 3.) Petitioner even admits that he relied on news articles, which were in the public sphere and reasonably discoverable as early as March 2017, to learn that parole had been abolished. (Doc. 1-3 at 39.) However, he does not explain why his PCR petition was filed almost two years after the media coverage and nearly a year after S.B. 1211 was signed into law. (See Docs. 1, 17; Doc. 16-3 at 43-55.) He merely states in a conclusory fashion that he "quickly sought relief in the Arizona courts by filing his [f]ifth notice of PCR as well as submitting a petition." (Doc. 1 at 14.)

(R&R (Doc. 18) at 12.) Petitioner argues that the Magistrate Judge failed to take into consideration his particular circumstances. He explains that due to various circumstances of prison, such as not having access to a law library, internet, or newspapers, he simply did not know he had received an illegal sentence until ADOC posted S.B. 1211, § 13-717, on May 14, 2018. (Objection (Doc. 19) at 2-4.)

"Ordinary prison limitations on [an inmate's] access to the law library . . . [are] neither 'extraordinary' nor [make] it 'impossible' for him to file his petition in a timely manner." (Resp. (Doc. 22) at 2 (quoting *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009)). Regardless of the flaws in Petitioner's asserted diligence, the Court finds here, as it did above, that "by May 14, 2018, the Petitioner understood that he had received an illegally lenient sentence. Almost a year later, he filed the 5th PCR on March 18, 2019.

There is no explanation for this delay. To the extent he might seek to rely on further developments of the law that transpired in 2019, pursuant to *Viramontes* and *Chaparro*, the Court notes that Petitioner's claim is not that he was denied parole, so it does not matter whether SB 1211 only addressed illegal sentences given pursuant to plea agreements. He was not diligently pursuing his claim by obtaining the June 15, 2019, Inmate Time Computation reflecting "life" and that ADOC did not have a parole eligibility date for him. *See* (Motion for Reconsideration (Doc. 16-3) at 132, 135 (disagreeing with state court's conclusion that he did not argue he was being denied parole eligibility, obtaining and tendering Inmate Time Computation for "life," explaining that a decision finding he would be eligible for parole pursuant to the illegally lenient sentence would resolve any need for further legal action). While the Motion for Reconsideration was denied, pursuant to *Viramontes* and *Chaparro*, prisoners like the Petitioner have now been given parole

- 8 -

eligibility dates. It is undisputed that the ineffective assistance of counsel claim raised in the Petition does not allege a denial of parole eligibility. To diligently pursue the habeas claim, the Petitioner only needed to know he had been given an illegal sentence. He admittedly knew this fact as of May 14, 2018. He was not diligent in pursuing this claim by waiting almost a year to file the 5th PCR.

**B. Procedural Default**

Federal habeas review of a procedurally defaulted claim is precluded unless the default is excused by establishing either (1) cause and prejudice, or (2) that a fundamental miscarriage of justice has occurred. (R&R (Doc. 18) at 14 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). "'Cause' that is sufficient to excuse a procedural default is 'some objective factor external to the defense' which precludes the Petitioner's ability to pursue his claim in state court." *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "'Prejudice' in the habeas context means actual, objective harm resulting from the alleged error." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982) (habeas petitioners "shoulder the burden of showing, not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage" and infected state proceedings with errors of constitutional dimension)).

There is an exception to a procedural default "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a federal habeas court may hear a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). In applying *Martinez,* the Court must determine "whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland [v. Washington*, 466 U.S. 668, 688 (1984)], whether the petitioner's claim of ineffective assistance of trial counsel is substantial, *and* whether there is prejudice." *Sexton v. Cozner,* 679 F.3d 1150, 1159 (9th Cir. 2012) (citing *Martinez,* 566 U.S at 17)).

The Magistrate Judge correctly set out the standard for *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

> To establish that trial counsel was constitutionally ineffective under *Strickland*, "a defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Deficient performance is established when counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Effective counsel enables defendants to "make a reasonably informed decision whether to accept a plea offer" <u>by informing them of the advantages and disadvantages of the offer</u>. *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)); *see Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

(R&R (Doc. 18) at 15) (emphasis added).

The Petitioner asserts ineffective assistance of counsel related to the plea agreement offered for second-degree murder with a sentencing range of 10 to 22 years imprisonment. According to Petitioner, trial counsel advised him that if he went to trial and was convicted of first-degree murder, he could be sentenced to life with the possibility of parole after twenty-five years. This was misinformation because parole was abolished in 1994. (Doc. 1-1 at 2.) Petitioner rejected the plea offer and proceeded to trial. He was convicted and sentenced to life with the possibility of parole after 25 years. All agree, this was an illegally lenient sentence, which was not appealed by the state and, therefore, the Petitioner is eligible for parole. Petitioner argues that if he had been comparing the 10-to-22-year prison sentence with a death or natural life sentence, he would have accepted the plea agreement.

The Magistrate Judge concluded: "While the advice was legally incorrect, it accurately described what could and did occur in the case. Hence, Petitioner had sufficient information to make an informed decision in rejecting a favorable plea agreement, which he did." *Id.* This is especially true because counsel's advice was not limited to the illegally lenient sentence. Counsel also told Petitioner that he might be sentenced to death or life in prison without parole. (Petition, Attach: 5th PCR (Doc. 1-3) at 8.) This Court agrees with the Magistrate Judge that Petitioner had accurate information to make an informed decision in rejecting a favorable plea agreement. In fact, at the time Petitioner was being sentenced,

hundreds of defendants were being given sentences including parole. The sentencing information given to the Petitioner for considering the plea offer was an accurate reflection of the sentencing options in Arizona at the time even though the state legislature had abolished parole. Would it have been ineffective assistance for defense counsel to ignore the possibility of this lenient, albeit illegal, sentence? The Court agrees with the Magistrate Judge's conclusion that the Petitioner has not presented a substantial ineffective-assistance-of-trial-counsel claim.

This finding alone means that the procedural default of Ground One cannot be excused. The Court adds that this case is distinguishable from *Viramontes,* where the court found similar facts presented a substantial claim of ineffective assistance of counsel. In *Viramontes*, the petitioner was being denied parole eligibility. The court explained, "where counsel allegedly provided ineffective assistance during plea negotiations, prejudice is demonstrated by showing 'that the conviction or sentence, or both, under the [rejected plea] offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'" *Viramontes*, 2019 WL 568944, at *10 (quoting *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)). In *Viramontes,* the petitioner's "rejection of the plea offer resulted in what is effectively a natural-life sentence, which unquestionably is more severe than the term-of-years sentence offered in the rejected plea." *Id.* Here, Petitioner's rejection of the plea offer resulted in a life sentence, with the opportunity for parole after serving 25 years. This is not effectively a natural-life sentence. It is precisely the sentence that his trial counsel advised was one possible option, which at the time he did not consider to be more severe than the term of years offered in the plea agreement to warrant accepting the plea. The Court finds the Petitioner fails to establish actual prejudice.

The Court finds the Petitioner has failed to establish any excuse for the procedural default and federal review is barred.

CONCLUSION

After de novo review of the issues raised in the Objection, this Court accepts and adopts the Magistrate Judge's R&R as the findings of fact and conclusions of law of this Court and denies the Petition.

**Accordingly**,

**IT IS ORDERED** that after a full and independent review of the record, in respect to the objections, the Magistrate Judge's Report and Recommendation (Doc. 18) is accepted and adopted as the findings of fact and conclusions of law of this Court.

**IT IS FURTHER ORDERED** that the Motion to Expand the Record (Doc. 23) is GRANTED.

**IT IS FURTHER ORDERED** that the Motion to Clarify (Doc. 24) is GRANTED.

**IT IS FURTHER ORDERED** that the Petition (Doc. 1) is DISMISSED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment and close this case.

**IT IS FURTHER ORDERED** that in the event Petitioner files an appeal, the Court grants a certificate of appealability, pursuant to Rule 11(a) of the Rules Governing Section 2254 cases, for Ground 1 of the Petition. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (granting COA because reasonable jurists may find procedural ruling debatable).

Dated this 23rd day of August, 2022.

_____
Honorable Cindy K. Jorgenson
United States District Judge